Case 7:15-cv-00397-LSC   Document 10   Filed 06/17/15   Page 1 of 14

FILED
2015 Jun-17 AM 09:41
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ELBERT L. BEALE, et al., | ) |
| Plaintiffs; | ) |
| vs. | ) 7:15-cv-00397-LSC |
| OCWEN LOAN SERVICING, LLC, | ) |
| Defendant. | ) |

MEMORANDUM OF OPINION AND ORDER

Before the Court is Defendant Ocwen Loan Servicing, LLC's ("Ocwen") motion to dismiss. (Doc. 4.) The motion has been fully briefed and is ripe for review. As further discussed below, the motion to dismiss is due to be granted in part and denied in part.

I.   Facts[1]

Plaintiffs Elbert and Patricia Beale ("the Beales") executed a mortgage on their home, which Ocwen then began servicing on or around June of 2013. The Beale's were current on their loan when Ocwen began servicing it. However, after they began

---

[1] The facts in this opinion are gleaned from the Plaintiff's complaint, with all statements of fact therein accepted as true. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1226, 1231 (11th Cir. 2000). These may not be the actual facts.

servicing the loan, Ocwen failed to properly and timely credit payments to the Beales' account, miscalculated the amounts due on the account, and incorrectly told the Beale's that they were behind on their payments.

On December 5, 2013, the Beales sent a payment by check to Ocwen but Ocwen informed the Beales that the payment had not been received. An Ocwen representative told them to cancel the check and pay over the phone instead, or the payment would be considered late and the Beales would be charged an appropriate fee. The Beales allowed Ocwen to debit their checking account directly and then canceled the check. Regardless, Ocwen later charged a check cancellation fee, despite telling the Beales that cancelling the check payment would avoid such a fee.

On November 14, 2014, the Beales sent Ocwen a "Qualified Written Request" under 12 U.S.C. § 2605(e) of the Real Estate Settlement Procedures Act ("RESPA"), asking Ocwen to correct "certain errors." (Doc. 1-1 at 10.) Ocwen responded to the request on January 5, 2015, but did not make any corrections to the Beales' account. In addition, Ocwen continued to represent to the Beales that they were behind on their payments, sent multiple notices of default to the Beales, threatened to foreclose on their home, and improperly charged the Beales various fees and penalties.

II.   Standard of Review

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotations omitted). This is a notable departure from the "no set of facts" standard; the Supreme Court has stated that standard is "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 563 (2007).

*Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. A complaint is not sufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555 (2007)). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a

complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[2]

III. Analysis

The Beale's complaint consists of seven counts. Count I alleges a breach of contract against Ocwen. Count II alleges a RESPA violation by Ocwen. Count III alleges negligence by Ocwen in the handling of the Beales' loan, while Count IV alleges wantonness. Count V alleges negligent and/or wanton hiring, training, supervision, and/or instruction by Ocwen. Count VI alleges fraudulent misrepresentation, while Count VII alleges defamation. Ocwen has moved to dismiss all of these counts. Each will be addressed in turn.

A. Count I - Breach of Contract

The elements of a breach of contract claim under Alabama law are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002).

Count I of the Beales' complaint simply states that "a contract existed between the Beales and the Defendants," Ocwen breached the contract, and that the Beales

---

[2] The Court rejects the Beale's argument that, because this case was removed from state court, this Court should apply the Alabama pleading standard rather than the Federal pleading standard.

were damaged as a result of the breach. The complaint fails to provide any facts detailing what contract existed between the Beales and the Defendants, and in what way Ocwen did not perform under the contract. Therefore, the complaint fails to state a valid claim for breach of contract.

### B. Count II - RESPA claim

RESPA requires, in part, that a loan servicer respond to the "qualified written request" of a borrower. 12 U.S.C. § 2605(e)(1). In response to a qualified written request stating the borrowers belief that his account is in error, the loan servicer must either "make appropriate corrections in the account of the borrower" or "provide the borrower with a written explanation or clarification" that provides "to the extent applicable, a statement of the reasons *for which the servicer believes the account of the borrower is correct* as determined by the servicer" and contact information for the borrower to obtain further support. 12 U.S.C. § 2605(e)(2) (emphasis added). *See also Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1134-35 (11th Cir. 2014) (response that provides an explanation to borrower for why servicer believes the account is correct is sufficient to satisfy RESPA, even if the explanation is confusing or unsatisfactory to the borrower).

The Beales' complaint states that they made a qualified written request to Ocwen demanding that it correct certain errors in their account, and that Ocwen

responded to that request on January 5, 2015. The complaint does not state that the response failed to provide an explanation of why Ocwen believed that the Beales' account was correct; rather, it alleges that Ocwen violated RESPA by failing to correct the alleged errors. However, the requirements of RESPA can be satisfied by either correcting any errors or providing an explanation of why the servicer believes the account is correct. Because the complaint fails to allege a deficiency in Ocwen's response, this count of the complaint is due to be dismissed.

      C.    Counts III and IV - Negligence and Wantonness

The Beales' allege that Ocwen both negligently and wantonly serviced their mortgage. As this Court has stated in the past, Alabama law generally does not recognize a cause of action for negligent or wanton mortgage servicing. *Prickett v. BAC Home Loans*, 946 F.Supp.2d 1236, 1244 (N.D. Ala. 2013); *see also Blake v. Bank of Am., N.A.*, 845 F. Supp.2d 1206, 1210-11 (M.D.Ala. 2012); *McClung v. Mortage Elec. Registration Sys., Inc.*, 2:11-CV-03621-RDP, 2012 WL 1642209, at *7-8 (N.D.Ala. May 7, 2012); *Jackson v. Countrywide Home Loans, Inc.*, 2:11-CV-327-MEF, 2012 WL 777180, at *6-7 (M.D.Ala. Mar. 7,2012). As explained in *Blake*, " Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract" because " 'a negligent failure to perform a contract . . . is but a breach of the contract.' " 845 F.Supp.2d at 1210 (quoting *Vines v. Crescent Transit Co.*, 85 So.2d 436,

440 (1956)). "A plaintiff can only sue in tort when a defendant breaches the duty of reasonable care—the duty one owes to another in his day-to-day affairs—when such a breach causes personal injury or property damage." *Id.* (citing *Vines*, 85 So.2d at 440). While misfeasance in the performance of a contract may give rise to an action in tort if it involves a breach of the duty owed to the general public, a mortgage servicer's obligations arise from the mortgage and promissory note, not the duty of reasonable care generally owed to members of the public. *Id.* Therefore, a borrower cannot allege a tort claim based on negligent or wanton servicing of the mortgage. *Id.*

The Beales contend that this situation is different from the cases cited above because they are alleging that they suffered mental anguish, rather than simply economic injuries. In support, the Beales cite to the Southern District case of *Givens v. Saxon Mortg. Serv., Inc.*, 2014 WL 2452891, at *14 (S.D. Ala. June 2, 2014), which states that "this line of cases leaves open the possibility of a cognizable claim for negligent/wanton mortgage servicing in cases involving personal injury or property damage." *See also Blake*, 845 F.Supp.2d at 1210 ("Under Alabama law, an agent, like [the mortgage servicer], could only incur tort liability while servicing a mortgage by causing personal injury or property damage," not purely economic loss). However, as the case cited by the Beales went on to recognize, allegations of mental anguish cannot save the negligence claim "by bringing 'personal injury' damages into play," because

Alabama law forbids mental anguish damages for negligence "except when the plaintiff has suffered a physical injury as a result of the negligent conduct or was placed in an immediate risk of physical injury by that conduct." *Givens*, 2014 WL 2452891, at *14 (citing *Brown v First Fed. Bank*, 95 So.2d 803, 818 (Ala.Civ.App. 2012); *see also Wallace v. SunTrust Mortage, Inc.*, 974 F.Supp.2d 1358, 1370 (S.D.Ala. 2013). Even if the Beales are correct that Ocwen would be liable for a negligence claim that resulted in personal injury, their claims of mental anguish are insufficient to qualify as a "personal injury."

However, while damages for mental anguish are not permitted in the negligence context, the Alabama Court of Civil Appeals has stated that such damages are recoverable in claims for wantonness. *Brown*, 95 So.3d at 818. The Alabama Supreme Court has defined wantonness as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Stone v. Southland Nat'l Ins. Corp.*, 589 So.2d 1289, 1291 (Ala. 1991). The Beales' complaint fails to provide sufficient facts to show that Ocwen acted consciously or with conscious disregard for the consequences of improperly servicing the loan. Therefore, the Beales have also failed to state a sufficient claim for wantonness, and both the Beales' claims for negligence and wantonness are due to be dismissed.

### D. Count V - Negligent and Wanton Hiring, Training, Supervision, and Instruction

The Alabama Supreme Court has described the elements of a negligent supervision claim as follows:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon it being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.

*Voyager Ins. Co. v. Whitson*, 867 So.2d 1065, 1073 (Ala. 2003) (quoting *Lane v. Cent. Bank of Ala., N.A.*, 425 So.2d 1098, 1100 (Ala. 1983)).

In their complaint, the Beales wholly rely on the conclusory allegation that Ocwen was "negligent and/or wanton in their hiring, training, supervision, and/or instruction of" the individuals who serviced the Beales' loan, handled the Beales' payments, and handled the Beales' account in general. (Doc. 1-1 at 11.) No facts in the complaint point to any knowledge held by Ocwen of the improper acts of its employees in servicing the loan or handling the Beales account or payments, or explain why Ocwen should have had knowledge. The mere conclusory statement that Ocwen acted negligently and wantonly is insufficient to state a claim for negligent and wanton supervision, and therefore Ocwen's motion is due to be granted as to Count V.

E. Count VI - Fraudulent Misrepresentation

Count six of the Beales' complaint asserts a claim for fraudulent misrepresentation. Ocwen asserts that this claim is due to be dismissed because it fails to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requirement is satisfied when a complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the consent of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). However, the Eleventh Circuit has emphasized that the application of Rule 9(b) "must not abrogate the concept of notice pleading." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

In the complaint, the Beales assert that Ocwen (1) "misrepresented the fees, finance charges, and penalties which were, were to be, or could be assessed and collected from the Beales," (2) "misrepresented the status of the Beales' loan, including telling the Beales that payments had not been received when, in fact, they

had," and (3) "misrepresented that the Beales would avoid late charges and other penalties if they cancelled their December 2013 check payment and instead made their December 2013 payment by phone." (Doc. 1-1 at 12.)

The complaint also asserts that the Beales sent Ocwen a payment "on or about December 5, 2013." (Doc. 1-1 at 8.) At some point in time Mrs. Beale "contacted Ocwen to confirm that they had received" the payment, and were informed they had not. (*Id.*) "Ocwen told Mrs. Beale to cancel the check payment and to pay over the phone, otherwise her payment would be considered late and the Beales would be charged a late fee." (*Id.*) Mrs. Beale agreed to pay over the phone and to cancel the December 5 check, but Ocwen ultimately charged the Beales a fee for cancelling the check, "despite Ocwen's representation that cancelling the check payment would avoid a fee." (Doc. 1-1 at 9.)

While the first two allegations of general misrepresentations concerning fees and penalties and concerning the status of the Beales account may not meet the heightened standard of Rule 9(b), the allegations concerning the December 5, 2013 payment are sufficient. The complaint sets out the statement that was made (that the Beales would avoid "late charges and other penalties" if they cancelled the check and made the payment by phone instead), how it was made (orally over the phone), the person who made the statement (an "Ocwen representative"), the way in which the Beales were

mislead by the statement, and what Ocwen thereby obtained (an additional fee). While the complaint fails to state the date on which the statement was made, it does say that the statement was made during the same phone call as when the Beales paid their December 2013 bill. This sets out with sufficient particularity facts supporting the alleged misrepresentations concerning the December 2013 payment, and therefore Ocwen's motion is due to be denied as to Count VI of the Beales' complaint.

    F.    Count VII - Defamation

To establish a prima facie case of defamation in Alabama:

> . . . the plaintiff must show [1] that the defendant was at least negligent, [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).

*Delta Health Group, Inc. v. Stafford*, 887 So.2d 887, 895 (Ala. 2004). Once again, the Beales' complaint alleges in a conclusory fashion that Ocwen "intentionally, recklessly, wantonly, maliciously, and/or negligently caused negative and untruthful information regarding Beales' credit or financial condition to be published to third parties." (Doc. 1-1 at 13.) The complaint provides insufficient factual allegations concerning how this allegedly negative or untruthful information was published or to whom it was published. Thus Ocwens' motion is due to be granted as to the Beales'

defamation claim.

### G. Claims Against Fictitious Defendants

The Beales' also assert claims against various fictitious defendants in many of these counts. Fictitious party pleading is not permitted in federal court, outside of the narrow exception where "the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). That is not the case here. Therefore, all claims against fictitious defendants are dismissed.

## IV. Conclusion

The Court intends to GRANT Ocwen's motion to dismiss as to Counts I, II, III, IV, V, and VII, and intends to DENY the motion as to Count VI for fraudulent misrepresentation. However, the Beales' have requested that, in the event this Court determined that they had not stated sufficient claims under the federal pleading standards, they be given the opportunity to amend their complaint to conform to that standard. Therefore, the Court will suspend that ruling for fourteen (14) days from the entry of this Order, to allow the Beales' to file an amended complaint. If the Beales' file an amended complaint within that time, Ocwen's motion to dismiss (Doc. 4) will be mooted; otherwise the Court will rule on the motion in accordance with this Order.

Done this 17th day of June 2015.

                                              L. SCOTT COOGLER
                               UNITED STATES DISTRICT JUDGE
                                                         177825